**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL DUBRUL,

        Plaintiff,

    v.

CITROSUCO NORTH AMERICA,
INC., et al.,

        Defendants.

Case No.: 1:12cv25

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court on Defendants Citrosuco North America, Inc. and Secretary/Treasurer Plan Administrator Salary Continuation Plan's (collectively, "Defendants") Motion to Dismiss. (Doc. 16).[1] Plaintiff Michael DuBrul ("Plaintiff") filed a response in opposition (Doc. 19), and Defendants filed their reply (Doc. 21). This matter is now ripe for review.

## I.    BACKGROUND

The relevant facts alleged in Plaintiff's Complaint and contained in the exhibits attached thereto are as follows:

### A.    Plaintiff's Employment with Citrosuco's Predecessor

Plaintiff began his employment with Juice Farms, Inc. (the "Corporation") in 1984 as a director of sales. (Doc. 1, ¶ 7). Plaintiff became recognized as a key employee and as a member of a select group of highly compensated management employees. (Doc. 1, ¶ 8; Doc. 1-1, p. 1). On September 9, 1993, the Corporation entered into a

---

[1] All document citations are to the Court's docket entry numbers.

Salary Continuation Agreement ("Agreement") with Plaintiff. (Doc. 1-1). The same or a similar agreement was offered to only four other select highly compensated employees out of approximately 1,500 employees. (Doc. 1, p. 3).

Plaintiff and the Corporation entered into the Agreement as a means for the Corporation to "retain the valuable services and business counsel of" Plaintiff, to "induce [Plaintiff] to remain in his executive capacity with the Corporation," and "to retain [Plaintiff] in order to prevent the substantial financial loss which the Corporation would incur if [Plaintiff] were to leave and were to enter the employment of a competitor." (Doc. 1-1, p. 1). The Agreement states that the Corporation will provide Plaintiff with a payment of $57,059.00 annually for ten years after his retirement so long as Plaintiff remains employed with the Corporation until March 19, 2016 when he turns 65 years of age. (Doc. 1, p. 5; Doc. 1-1, §§ 1-2 and Schedule B). The Corporation retains the right to accelerate payment of the benefits owed without Plaintiff's consent. (Doc. 1-1, § 8). The benefits provided by the Agreement are unfunded and unsecured, and any assets used or acquired by the Corporation to satisfy its obligations under the Agreement are general assets of the Corporation subject to the claims of its creditors. (Doc. 1, ¶¶ 9-12, 20; Doc. 1-1, § 4).

To claim benefits under the Agreement, Plaintiff or the designated recipient must follow a claims procedure. (Doc. 1-1, § 3). Initially, Plaintiff or the designated recipient is required to make a written request to the named fiduciary who is the Secretary/Treasurer of the Corporation. (Doc. 1-1, § 3(a)-(b)). If the claim is denied in whole or in part, then Plaintiff or another claimant must be notified in writing with specified information about the denial within at least ninety days after the claim is

2

received by the named fiduciary. (Doc. 1-1, §§ 3(c), (d)). Plaintiff then must be given a chance to appeal the denied claim by submitting a written appeal request to the named fiduciary within sixty days after the receipt of the denial. (Doc. 1-1, § 3(e)). The decision to hold a hearing to consider the appeal is within "the sole discretion" of the named fiduciary, whether or not such a hearing is requested by Plaintiff or his designated recipient. (Doc. 1-1, § 3(g)). A decision then shall be made "promptly" by the named fiduciary. (Doc. 1-1, § 3(d)-(h)).

The Agreement is not to "be deemed to create a contract of employment between the Corporation and the Employee and shall create no right in the Employee to continue in the Corporation's employ for any specific period of time, or to create any other rights in the Employee or obligations on the part of the Corporation, except as are set forth in this Agreement." (Doc. 1-1, § 5(a)). The Agreement further indicates that the Corporation's right to terminate Plaintiff for cause shall not be restricted and that Plaintiff's right to terminate his employment shall not be restricted. (Doc. 1-1, § 5). "Cause" is defined as incompetence, insubordination, conviction of a felony, alcohol abuse which affects job performance, or drug addiction. (Doc. 1-1, § 5(b)).

The benefits to be provided to Plaintiff are to be independent of any other benefits received by Plaintiff. (Doc. 1-1, §7). Specifically, the Agreement provides that:

> The benefits payable under this Agreement shall be independent of, and in addition to, any other benefits or compensation, whether by salary, or bonus or otherwise, payable under any other employment agreements that now exist or may hereafter exist from time to time between the Corporation and [Plaintiff]. This Agreement between the Corporation and [Plaintiff] does not involve a reduction in salary or foregoing an increase in future salary by [Plaintiff]. Nor does the Agreement in any way affect or reduce the existing and future compensation and other benefits of [Plaintiff].

3

(Doc. 1-1, § 7). The Agreement is binding on the "recipients, beneficiaries, heirs, executors and administrators" of Plaintiff and "upon the successors and assigns of the Corporation." (Doc. 1-1, § 7). Plaintiff designated his beneficiary as Susan S. DuBrul. (Doc. 1-1, Schedule A).

### B.  Assignment and Modification of the Agreement

On June 30, 2007, Juice Farms, Inc. merged into Citrus Coolstore, Inc. (Doc. 1, ¶ 21). Plaintiff, Juice Farms, Inc. and Citrus Coolstore, Inc. entered into a binding written modification of the Agreement whereby the parties agreed that the Agreement would be assigned to Citrus Coolstore, Inc. without triggering the accelerated vesting and funding of the payments set forth in the Agreement. (Doc. 1, ¶ 21; Doc. 1-2, pp. 1-2). The modification provided that Plaintiff would continue to be employed after the merger on the same terms as his current employment, including the Agreement as modified. (Doc. 1, ¶ 21; Doc. 1-2, pp. 1-2). In or about September 1997, Citrus Coolstore, Inc. changed its name to Citrosuco North America, Inc. (*i.e.*, Citrosuco). (Doc. 1, ¶ 24). Citrosuco remained bound by the Agreement and its modification. (Doc. 1, ¶ 24). Citrosuco's former President, Elliot Seabrook, referred to the Agreement as the "Golden Handcuff." (Doc. 1, ¶ 20).

### C.  Plaintiff's Termination

Plaintiff remained employed with Citrosuco for over 18 years. (Doc. 1, ¶ 25). He had no intention to leave his employment prior to March 19, 2016. (Doc. 1, ¶ 25). Citrosuco, however, terminated Plaintiff effective October 15, 2011. (Doc. 1, ¶ 27). The expressed reason for terminating his employment was "industry conditions" and to help with "managing and reducing cost." (Doc. 1, ¶ 27).

### D.  Plaintiff's Request for Compliance with Agreement

Pursuant to the Agreement, Plaintiff made a written request for compliance with the terms of the Agreement and for payment of damages for his termination.  (Doc. 1, ¶ 28).  His request was denied.  (Doc. 1, ¶ 28).  Plaintiff then exercised his right of appeal of the request for benefits, which also was denied.  (Doc. 1, ¶ 28).

### E.  This Lawsuit

On January 11, 2012, Plaintiff filed this lawsuit.   In his Complaint, he brings seven claims for relief.  (Doc. 1).  Count One is for a declaratory judgment relating to the Agreement.  (Doc. 1, pp. 8-9).  Count Two is for breach of employment contract for termination without cause.  (Doc. 1, pp. 9-10).  Count Three is for breach of employment contract for termination foreclosing salary continuation benefits.  (Doc. 1, pp. 10-11). Count Four is in the alternative to Count Three, and is for a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), for loss of benefits under the Agreement.  (Doc. 1, pp. 10-11).  Count Five is in the alternative to Count Two, and is for violation of ERISA for loss of salary under the Agreement.  (Doc. 1, pp. 12-13).  Count Six is for promissory estoppel.  (Doc. 1, pp. 13-14).  Count Seven is for unjust enrichment.  (Doc. 1, pp. 14).  Defendants have moved to dismiss all seven of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 16).

## II.  LEGAL ANALYSIS

### A.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss, this Court must "'construe the complaint in the light most favorable to the

plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, *passim* (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The complaint need not contain detailed factual allegations, yet it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers labels and conclusions or merely a formulaic recitation of legal elements will not do.  *Id.*  Nor does a complaint suffice if it tenders naked assertions devoid of factual enhancement.  *Id.*  While a plaintiff need not plead specific facts, the complaint must "give the defendant fair notice of what the claim

is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555).

A court may consider the following when ruling on a motion to dismiss: "(1) any

documents attached to, incorporated by, or referred to in the pleadings; (2) documents

attached to the motion to dismiss that are referred to in the complaint and are central to

the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public

records; and (4) matters of which the court may take judicial notice."  *Smith v. Bd. of*

*Trs. Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 889 (N.D. Ohio 2010) (citing *Whittiker*

*v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924–25 (N.D. Ohio 2009)); *see*

*also Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); Fed. R. Civ. P. 10(c)

("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for

all purposes.").  Both the Agreement and the June 26, 1997 Modification of the

Agreement are attached to Plaintiff's Complaint (Docs. 1-1, 1-2).  Because they are

"referred to in the complaint and are central to the plaintiff's allegations," the Court may

consider them both here.  *See Smith*, 746 F. Supp. 2d at 889.

## B.   Breach of Contract

Defendants argue that Plaintiff's claims for breach of contract (Counts Two and

Three) should be dismissed because the Agreement, as properly interpreted under

Florida law, does not constitute a "contract of employment" under which Plaintiff could

be discharged from Citrosuco only for cause.  (Doc. 16, pp. 14-15).  Plaintiff contends

that Defendants misconstrue the Agreement, which creates a contract for employment

under which Plaintiff could be terminated only for cause, and whereby a termination

without cause entitles him to not only his salary continuation benefits but also to his lost

salary and lost benefits caused by the wrongful discharge. (Doc. 19, pp. 25-27). In making their respective arguments, the parties argue that the issue is a matter of contractual interpretation that is reserved for the Court. (Doc 16, pp. 14-15; Doc. 19, pp. 25-27; Doc. 21, p. 15). The parties also agree that the choice-of-law provision in section 12 of the Agreement requires the Court to apply Florida law when construing the Agreement. (Doc. 16, p. 15; Doc. 19, p. 25).

Under Florida law, the construction of a written document presents a question of law for the Court, if its language is clear and unambiguous. *Crawford v. Barker*, 64 So.3d 1246, 1255 (Fla. 2011) (quoting *Levitt v. Levitt*, 699 So. 2d 755, 757 (Fla. App. 1997)). Where the language is clear and unambiguous, the parties' intent must be "gleaned from the four corners of the document." *Id.* "'[T]he language itself is the best evidence of the parties' intent, and its plain meaning controls.'" *Id.* (quoting *Richter v. Richter*, 666 So. 2d 559, 561 (Fla. App. 1995)).

"Resort to rules of construction is permissible only where the contractual language is ambiguous." *Miller v. Kase*, 789 So. 2d 1095, 1098 (Fla. App. 2001) (citing *Herring v. First S. Ins. Co.*, 522 So. 2d 1066, 1068 (Fla. App. 1988); *Southeastern Fire Ins. Co. v. Lehrman*, 443 So. 2d 408, 408-09 (Fla. App. 1984); *Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Co.*, 215 So. 2d 336, 338 (Fla. App. 1968)). An agreement is ambiguous when it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract. *Miller*, 789 So. 2d at 1097-98 (citing *Mariner Cay Prop. Owners Ass'n v. Topside Marina*, 714 So. 2d 1130, 1131-32 (Fla. App. 1998); *Vienneau v. Metropolitan Life Ins. Co.*, 548 So. 2d 856, 859 n.5 (Fla. App. 1989)). In construing the language, the Court may consider extrinsic matters, not to

vary the terms of the agreement, but to explain, clarify or elucidate the language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties. *Miller*, 789 So. 2d at 1098; *see also Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.*, 302 So.2d 404, 407 (Fla. 1974); *Friedman v. Virginia Metal Prods. Corp.*, 56 So. 2d 515, 517 (Fla. 1952). A "reasonable interpretation of a contract is preferred to an unreasonable one." *Crawford*, 64 So. 3d at 1255. When "a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction[,]" those "ambiguities and inconsistencies in a contract are to be interpreted against the draftsman." *Id*. "Generally speaking, unless it appears as a matter of law that a contract cannot support the action alleged, a complaint should not be dismissed on a motion to dismiss for failure to state a cause of action." *Vienneau*, 548 So.2d at 860 (citing *Helms v. General Film Development Corp.*, 346 So.2d 1064 (Fla. App. 1977); *Spindler v. Kushner*, 284 So.2d 481 (Fla. App. 1973)). *Accord*: *Lonestar Alternative Solution, Inc. v. Leview-Boymelgreen Soleil Developers, LLC*, 10 So. 3d 1169, 1172 (Fla. App. 2009).

With those principles in mind, the Court is bound to accept Plaintiff's allegations as true and proceed to resolve the question of whether the allegations are sufficient to state a cause of action. Although each party believes that the Agreement is a model of clarity, each ascribes a different meaning to the allegedly clear and unambiguous language. The central provision in dispute is Section 5(a) of the Agreement, which provides:

> This Agreement shall not be deemed to create a contract of employment between the Corporation and the Employee and shall create no right in the Employee to continue in the Corporation's

employ for any specific period of time, or to create any other rights in the Employee or obligations on the part of the Corporation, except as are set forth in this Agreement. Nor shall this Agreement restrict the right of the Corporation to terminate the Employee for cause, or restrict the right of the Employee to terminate his employment.

(Doc. 1-1, § 5(a)). Plaintiff contends that in the first sentence, the phrase "except as are set forth in this Agreement" (the "except phrase") qualifies the entire sentence because that interpretation makes sense in the context of the Agreement, whereas Defendants argue that it qualifies only the phrase "to create any other rights in the Employee or obligations on the part of the Corporation" because they believe that interpretation is consistent with the Agreement. (Doc. 16, pp. 14-17; Doc. 19, pp. 25-28; Doc. 21, pp. 12-14). Since the "except phrase" is set off at the end of the sentence by a comma, it could be either a non-restrictive phrase applicable to the whole sentence or a restrictive phrase applicable to only the penultimate phrase of the sentence. Either interpretation could lead to a reasonable interpretation of the Agreement as a whole. Construing the phrase in favor of Plaintiff as it must to do at this stage of the litigation, the Court finds it plausible that the "except phrase" qualifies the entire sentence as proposed by Plaintiff thereby providing Plaintiff with certain employment rights set forth in the Agreement.

The next sentence of Section 5(a) plausibly sets forth one of the employment rights created under the Agreement: "for cause" termination. Defendants interpret the sentence as creating "for cause" termination rights with respect to salary continuation benefits only, while Plaintiff argues that the "for cause" termination right extends to all aspects of his employment. (Doc. 16, p. 17; Doc. 19, p. 27). Supporting Plaintiff's interpretation are the section title of "Employment Rights" and the lack of any express

limitation of the alleged "for cause" termination right to the salary continuation benefits. (Doc. 1-1, § 5). Further, if the prior sentence is interpreted in favor of Plaintiff to mean that certain employment rights are created by the Agreement, then the interpretation of the two sentences would be consistent. On the other hand, the Agreement governs salary continuation benefits, and not Plaintiff's regular salary and other general employment benefits (*see* Doc. 1-1, § 7), which could suggest an intent not to create any general employment rights that go beyond the scope of the Agreement. At this early stage of the litigation, the language is reasonably construed in favor of Plaintiff. As such, the Court finds it is plausible that Plaintiff has stated a claim for relief relating to a general employment right of "for cause" termination.

Likewise, the Agreement is construed in favor of Plaintiff as to whether it contains a definite term of employment. While the Agreement does not expressly guarantee a term of employment and mere expectations of employment are insufficient, *Raytheon Subsidiary Support Co. v. Crouch*, 548 So. 2d 781, 782 (Fla. App. 1989), a term of employment could be inferred from the language of the Agreement that provides that Plaintiff shall be entitled to benefits if he retires after being continuously employed by Citrosuco until at least March 19, 2016. (Doc. 1-1, §§ 1-2); *see also Vienneau*, 548 So.2d at 861 (trial court erred in granting motion to dismiss complaint after construing the contract to not provide for a definite term of employment at that early stage). As such, it could be inferred that the Agreement gave Plaintiff the right to be employed until March 19, 2016. Such an interpretation also would be consistent with Plaintiff's proposed interpretation of the "for cause" provision because where employment is for a definite term, the presumption is that the employment is no longer at will and the

employee may not be terminated except "for cause." *Olsen v. Allstate Ins. Co.*, 759 F. Supp. 782, 786 (M.D. Fla. 1991) (citing *Jarvinen v. HCA Allied Clinical Lab.*, 552 So.2d 241 (Fla. App. 1989); *De Marco v. Publix Super Markets*, 360 So.2d 134 (Fla. App. 1978), *aff'd*, 384 So. 2d 1253 (Fla. 1980)).  The interpretation also would be consistent with the stated reason for the Agreement, which is to retain Plaintiff to prevent substantial financial losses and provide retirement benefits as long as he complies with the Agreement's terms of being continuously employed until March 19, 2016 and retiring.  (Doc. 1-1, p. 1).  Defendants' proposed interpretation that he would be permitted to receive benefits if terminated without cause after satisfying those pre-conditions is not necessarily consistent with their own proposed interpretation of the Agreement since Plaintiff could not satisfy the pre-condition of continuing to be employed with Citrosuco if he was terminated.

Although Plaintiff's interpretations of the Agreement discussed above are plausible, they are not necessarily the interpretations that ultimately will be adopted by the Court.  Nevertheless, if any party is to bear the burden for the choice of wording in the Agreement, it should be Defendants who are alleged to have drafted the Agreement (Doc. 19, p. 28), rather than Plaintiff in whose favor the language shall be construed at this early stage of the litigation.  *Crawford*, 64 So. 3d at 1255.  Indeed, in the cases relied upon by Defendants in support of an interpretation as a matter of law, none of those courts granted a motion to dismiss based on contractual interpretation; rather, most of them were decided at more advanced stages of the litigation.  *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979) (finding the trial court properly granted summary judgment to the defendant based upon its interpretation

of an insurance contract); *DHL Express (USA), Inc. v. Express Save Indus.*, No. 09-60276, 2009 U.S. Dist. LEXIS 109607, at *15 (S.D. Fla. Nov. 24, 2009) (denying summary judgment on breach of contract claim after interpreting contractual provisions to provide a right to relief); *Three Keys, Ltd. v. Kennedy Funding, Inc.*, 28 So. 3d 894 (Fla. App. 2009) (finding that trial court properly directed a verdict for appellees on appellant's breach of contract claim); *General Sec. Nat'l Ins. Co. v. Marsh*, 303 F. Supp. 2d 1321 (M.D. Fla. 2004) (granting insurance company's motion for summary judgment where a plain reading of the contract revealed that the insurance company owed no further obligation to the insured). *But c.f. St. Johns Inv. Mgmt. Co. v. Albaneze*, 22 So. 3d 728, 733 (Fla. App. 2009) (reversing trial court's denial of a temporary restraining order where the plain meaning of the contract indicated the non-compete provisions were enforceable against the employee).

For each of the foregoing reasons, the Court finds that Plaintiff has stated a plausible claim for breach of contract in Counts Two and Three. Therefore, Defendants' Motion is denied as to both Count Two and Count Three.[2]

## C.   ERISA Claims

Defendants argue that Plaintiff's ERISA claims (Counts Four and Five) should be dismissed because the Agreement does not constitute an ERISA Benefit "Plan" under the test articulated in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). (Doc. 16, pp. 8-12; Doc. 21, pp. 3-8). Plaintiff counters that the applicable test for determining

---

[2]Although Defendants did not raise the issue of preemption at the motion to dismiss stage, Plaintiff's breach of contract claim may be preempted if it is determined that the Agreement is governed by ERISA. 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.").

whether an ERISA Benefit "Plan" exists is the more stringent test articulated in *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982), and that Plaintiff has sufficiently alleged facts to support a claim for relief that is plausible and rises above the speculative level. (Doc. 19, pp. 10-20).[3]

ERISA governs an employer's administration of employee benefits plans. 29 U.S.C. § 1001-1381. ERISA defines an employee benefits plan as an employee welfare benefits plan, an employee pension benefits plan, or a plan that is both an employee welfare benefits plan and an employee pension benefits plan. 29 U.S.C. § 1003(3). As the United States Supreme Court has recognized, the definitions selected by Congress to describe what constitutes a qualifying ERISA benefits plan are tautological. *Fort Halifax*, 482 U.S. at 8-9. As such, the judiciary has had to fill in the textual gap to determine what qualifies as an ERISA plan. *See generally id.*; *Dillingham*, 688 F.2d 1367.

The Sixth Circuit has recognized that the "existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person." *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996). It has articulated the following three-part test for determining whether an ERISA benefits "plan" exists:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. [citations omitted]. Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could]

---

[3]The parties dispute whether an agreement's status as an ERISA plan is a jurisdictional requirement or a merits determination. (Doc. 16, p. 8; Doc. 19, p. 14; Doc. 21, p. 2). Following Sixth Circuit precedent, the Court finds that it is a merits determination and not a jurisdictional requirement. *Daft v. Advest, Inc.*, 658 F.3d 583, (6th Cir. 2011).

ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991) (citing [*Dillingham*], 688 F.2d at 1373), *cert. denied,* 504 U.S. 973, 119 L. Ed. 2d 565, 112 S Ct. 2941 (1992)). Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees. [citations omitted].

*See Thompson*, 95 F.3d at 434-35. It is only the second prong of that test that is in dispute at this stage of the litigation. (*See* Doc. 19, p. 12; Doc. 21, pp. 1-9).

That second prong is the four-factor test set forth in *Dillingham*, 688 F.2d at 1373. *See Thompson*, 95 F.3d at 434-35. Notably, the Sixth has recognized that the *Dillingham* test is not exclusive of the *Fort Halifax* test. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006). Rather, the fourth factor of the *Dillingham* test – procedures for receiving benefits – incorporates the "ongoing administrative scheme" requirement from *Fort Halifax. Hughes v. Zurz*, 298 Fed. App'x 404, 414 (6th Cir. 2008). The "ongoing administrative scheme requirement is a lesser hurdle than the reasonably ascertainable claims procedure requirement." *Id.*[4] "[T]he claims procedure, a requirement for all ERISA benefits plans, in itself constitutes an ongoing administrative scheme." *Id.* As such, a plaintiff who is able to satisfy the more stringent *Dillingham* test also is able to satisfy the *Fort Halifax* "ongoing administrative scheme" requirement, which the Sixth Circuit has specifically applied when determining whether severance benefits are part of an ERISA plan. *Id.*; *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616 (6th Cir. 2002). The two particular factors that the Sixth Circuit examines to

---

[4] Defendants' argument that the *Fort Halifax* test is a more exacting standard than the *Dillingham* test (Doc. 21, pp. 5-6) is not supported by Sixth Circuit precedent. Indeed, as explained above, the Sixth Circuit has held that the *Fort Halifax* test is a *less* exacting standard than the *Dillingham* test. *Hughes*, 298 Fed. App'x at 414.

determine whether the severance plan meets the *Fort Halifax* requirement are (1) whether the employer has discretion over the distribution of benefits, and (2) whether there are on-going demands on the employer's assets. *Cassidy*, 308 F.3d at 616. *Accord: Hughes v. White,* 467 F. Supp. 2d 791, 804 (S.D. Ohio 2006); *Kolkowski*, 448 F.3d at 848.

Here, the Court will consider whether Plaintiff has alleged plausible ERISA claims under the *Dillingham* test while keeping in mind the *Fort Halifax* requirement.

### 1. Intended benefits

To satisfy its burden as to the first factor of the *Dillingham* test, Plaintiff must allege facts sufficient to make it plausible that a reasonable person could ascertain the intended benefits. *Thompson*, 95 F.3d at 434-35. Here, the Agreement upon which Plaintiff relies sets forth the precise amount of the payment to be received and the exact time period during which it is to be received. (Doc. 1-1, Schedule B). Specifically, Plaintiff shall receive "yearly payments of Fifty-seven Thousand, Fifty-nine and no/100 Dollars (57,059.00) each to the employee MICHAEL DUBRUL, for a period of ten years." (Doc. 1-1, Schedule B). The Agreement further indicates that the benefit is a "fringe benefit" and is independent of any other benefits Plaintiff received, and does not reduce or otherwise affect his salary. (Doc. 1-1, p. 1 and § 7). The Agreement labels the benefits to be provided as "Salary Continuation and Post[-]Retirement Death Benefit." (Doc. 1-1, § 2). If Plaintiff is eligible, then the benefits are to be paid to Plaintiff within thirty days after he retires on or after March 19, 2016. (Doc. 1-1, §§ 1-2). The Agreement provides that the benefits are intended to compensate him in the future for his continued employment and loyalty to the company. (Doc. 1-1, p. 1). The

benefits will be distributed and the taxes withheld from them at the time they are paid out to Plaintiff. (Doc. 1-1, § 2). Construing these facts in the light most favorable to Plaintiff, the Court finds that he has alleged facts that make it plausible the intended benefits can be ascertained by a reasonable person. Plaintiff therefore has satisfied his burden as to the first *Dillingham* factor at this stage of the litigation.

## 2.    Class of beneficiaries

To satisfy its burden as to the second factor of the *Dillingham* test, Plaintiff must allege facts sufficient to make it plausible that a reasonable person could ascertain the class of beneficiaries. *Thompson*, 95 F.3d at 434-35. Here, the Agreement itself makes clear who the beneficiaries of the particular Agreement are by making the benefits payable to Plaintiff or to his designated beneficiary who is listed in Schedule A of the Agreement. (Doc. 1-1, § 1 and Schedule A). Defendants do not dispute that issue. Instead, the disputed issue is whether the Agreement applies only to Plaintiff and is a "purely individual contract" outside the scope of ERISA.[5] (Doc. 16, pp. 8-9; Doc. 19, pp. 14-15).

Defendants argue that the Agreement is a "purely individual contract" where the triggering event for the remittance of the employee benefit does not "occur more than once, at a different time for each employee" and therefore cannot be within the scope of ERISA. (Doc. 16, pp. 8-9) (citing *Cvelbar v. CBI Ill.*, 106 F.3d 1368, n.8 (7th Cir. 1997); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324 (9th Cir. 1992)). The Court disagrees with Defendants' analysis.

---

[5]This analysis also is relevant to the fourth prong of the *Dillingham* test to the extent that Defendants argue that a purely individual contract cannot require an ongoing administrative scheme under *Fort Halifax*.

On its face, the Agreement applies only to Plaintiff. (Doc. 1-1). However, Plaintiff has alleged that four other highly compensated and select management employees received similar agreements (Doc. 1, ¶ 10), which is sufficient at this stage of the litigation to plausibly suggest that the Agreement is not a purely individual contract since a triggering event (*i.e.*, the retirement of one of the employees) could occur more than once and at a different time for each employee. *See Cvelbar*, 106 F.3d at 1375 (inclusion of four other top employees suggests agreement may not be a one-person ERISA plan); *Fort Halifax*, 482 U.S. at 15 n.9 (recognizing that an ERISA plan may exist when it is predictable that different employees will receive the benefits at different points in the future).

However, even if the alleged plan does apply to only one individual, Defendants still are not entitled to dismissal of Plaintiff's ERISA claims at this stage of the litigation. The weight of authority indicates that one-person plans may qualify as ERISA plans. *Cvelbar*, 106 F.3d at 1376 ("Even if we must characterize the arrangement before us as a one-person plan, we have no difficulty in holding that it is possible for a one-person arrangement to qualify as an ERISA plan. Certainly, the plain language of ERISA in no way excludes from coverage those situations in which only one employee is extended benefits"); *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991) ("[W]e conclude that a plan covering only a single employee, where all other requirements are met, is covered by ERISA."); *Biggers v. Wittek Indus.*, 4 F.3d 291, 297 (4th Cir. 1993) (stating that the court was "not aware of any requirement that a plan must cover more than one employee in order to be controlled by ERISA"); *Evanoff v. Banner Mattress Co.*, 526 F. Supp. 2d 810, 816 fn.2 (N.D. Ohio 2007) ("The Agreement is not excluded from

coverage as an ERISA plan because it only applies to one person.") (citing *B-T Dissolution, Inc. v. Provident Life and Accident Ins. Co.*, 101 F. Supp. 2d 930, 940 n.16 (S.D. Ohio 2000)). "[A]s long as the benefits program meets the other requirements of an ERISA plan . . . the program does not fall outside the ambit of ERISA merely because it covers only a single employee." *Cvelbar*, 106 F.3d at 1376. *Accord*: *Williams*, 927 F.2d at 1545 ("[W]e conclude that a plan covering only a single employee, where all other requirements are met, is covered by ERISA."). As explained herein, Plaintiff has alleged sufficient facts to satisfy the other factors necessary for the plausible existence of an ERISA plan at this stage of the litigation.

The Court is not persuaded by Defendants' reliance upon two Department of Labor opinion letters to show that an ERISA plan covering one employee falls outside the scope of an ERISA "Plan." (Doc. 16, p. 12; Doc. 21, p. 8). In the early days of its administration, the Department of Labor found that two separate individual contracts did not constitute benefit plans under ERISA. U.S. Dep't of Labor Op. Letter 76-110 (Sept. 28, 1976); U.S. Dep't of Labor Op. Letter 76-79 (May 26, 1976). Not only do those two letters contain such incomplete facts that the Court is unable to determine whether the circumstances surrounding those individual contracts were analogous to the circumstances in this case, but also since that time, the Department of Labor has recognized that a contract between an employer and a single employee may constitute an employee benefits plan. U.S. Dep't of Labor Op. Letter 91-20 (July 2, 1991). For these reasons, the Court is unable to rely on the opinion letters as authority for dismissing Plaintiff's ERISA claims on the purely individual contract issue.

Accordingly, the Court finds that Plaintiff has met his burden as to the second *Dillingham* factor at this stage of the litigation.

### 3. <u>Source of financing</u>

To satisfy his burden as to the third factor of the *Dillingham* test, Plaintiff must allege facts sufficient to make it plausible that a reasonable person could ascertain the source of financing. *Thompson*, 95 F.3d at 434-35. Section 4 of the Agreement provides that it is an "unfunded and unsecured promise to pay." (Doc. 1-1, § 4). Further, "[a]ny assets which the Corporation may acquire to help cover its financial liabilities are and remain general assets of the Corporation subject to the claims of its creditor." (Doc. 1-1, § 4; *see also* Doc. 1-1, § 6). Based on the plain language of the Agreement, the source of financing is the general assets of Citrosuco. The parties agree on that issue.

Where the parties part ways, however, is on the issue of whether the Agreement can be an ERISA "plan" when the benefits are to be paid out of the general corporate assets instead of a set-aside trust or segregated fund. Defendants argue that it cannot be. (Doc. 16 at 9) (citing *Hart v. Reynolds & Reynolds Co.*, No. C-39-2-190, 1992 U.S. Dist. LEXIS 22745, at *14 (S.D. Ohio June 9, 1992); *James v. Fleet/NorStar Fin. Group, Inc.*, 992 F.2d 463, 467 (2d Cir. 1993)).[6]

As Defendants acknowledge (Doc. 16 at 9), benefits that are paid out of general corporate asserts are only *more likely* not to be within the scope of ERISA. That does not mean that an ERISA plan can never exist when the benefits are paid out of the

---

[6]This issue also is relevant to the Court's analysis as to the fourth factor of the *Dillingham* test.

general corporate assets.  Indeed, the caselaw supports a conclusion that ERISA plans may exist when benefits are paid out of the general corporate assets.

In the *Hart* case cited by Defendants, the court found that a salary continuation plan was not within the scope of ERISA because the payment of the benefit was a "payroll practice" under 29 C.F.R. § 2910.3-1(b)(2) that is exempt from the definition of "employee welfare benefit plan."  *Hart*, 1992 U.S. Dist. LEXIS 22745, at *15.  Section 2910.3-1(b) provides that benefits do not qualify as employee welfare benefits under ERISA when they paid out of the employer's general assets *and* are part of an employee's normal compensation.  *Hart*, 1992 U.S. Dist. LEXIS 22745, at *14 (citing 29 C.F.R. § 2910.3-1(b)).  In light of that definition, the *Hart* court held that the plaintiff's disability compensation was the same compensation she received for a normal forty-hour work week and that the benefits were paid out of the corporation's general assets. *Id.* at *15.  The benefits therefore did not fall within the scope of ERISA.  *Id.*

Here, in contrast to *Hart*, the parties agree that the payments made to Plaintiff under the Agreement are to be made out of the employer's general assets, but there are sufficient allegations to make it plausible that the payments are not made as part of Plaintiff's normal compensation.  For example, there is nothing in the Agreement that states that Plaintiff is to receive compensation equal to his normal salary earned at the time of retirement.  (*See* Doc. 1-1).  Instead, the Agreement entered into in 1993 provides for an exact amount of compensation to be provided, which plausibly did not take into account the specific salary that Plaintiff would be receiving at the time he

retired in or after March 19, 2016.  (Doc. 1-1, Schedule B).[7]  Moreover, the Agreement plainly states that the benefits payable under the Agreement are "independent of, and in addition to, any other benefits or compensation, whether by salary, or bonus or otherwise, payable under any other employment agreements . . . ."  (Doc. 1-1, § 7).  The language "independent of, and in addition to" suggests that the benefits would be separate from – rather than part of – his normal compensation.

The other case cited by Defendants is *James*, 992 F.2d at 467.  (Doc. 16, p. 9). Defendants rely upon *James* for the proposition that "'golden parachute' payments to a select group of executives [are] not an ERISA 'plan' where such was funded by general corporate assets."  (Doc. 16, p. 9).  However, *James* does not stand for that proposition and the case did not even concern golden parachute payments.  *See James*, 992 F.2d at 467. Rather, the *James* court found that an employer's undertaking to give employees sixty days of pay following the last day or work until an internal consolidation was complete at which time the employees would be terminated did not constitute an ERISA plan because there was no ongoing administrative scheme. *Id.*  In reaching its decision, the court considered several other cases, including *Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir. 1995), *aff'd*, 477 U.S. 901 (1986), and *Fontenot v. NL Indus. Inc.*, 953 F.2d 960 (5th Cir. 1992).

With respect to *Gilbert*, the court noted that it had found an employer's *unfunded* severance plan to pay employees who were involuntarily terminated to be an employee

_____

[7] In their Motion, Defendants state that the salary to be paid is equal to his 1993 salary, not his salary at the time he retired.  (*See* Doc. 16, p. 3).

22

welfare benefits plan. *James*, 992 F.2d at 467. That holding supports Plaintiff's position here.

As for *Fontenot*, the *James* court recognized that the *Fontenot* court had found that a "golden parachute" program providing severance benefits did not qualify as an ERISA plan. *James*, 992 F.2d at 468. However, the *Fontenot* court reached that conclusion after determining that the severance benefit was going to be paid one time, was triggered by a single event, and required no ongoing administrative scheme. *Fontenot*, 953 F.2d at 962. Therefore, the deciding factor in the case was not whether the benefits were paid out of the general assets, but whether the plaintiff had demonstrated that the other requirements of an ERISA plan were satisfied. *Id.*; *see also Williams*, 927 F.2d at 1544 (plan covering a single employee funded by general assets constituted an employee benefits plan if there is an ongoing administrative plan; "an employer's failure to meet an ERISA requirement does not exempt the plan from ERISA coverage," as an employer "should not be able to evade the requirements of the statute merely by paying . . . benefits out of general assets" (citations omitted))). As such, *Fontenot* does not support Defendants' position that an ERISA claim must be dismissed whenever the benefits are paid out of general assets. Nor does it support dismissal of the ERISA claims here where, in contrast to *Fontenot*, Plaintiff has alleged sufficient facts to satisfy the other criteria for an ERISA plan at this stage of the litigation.

Furthermore, as Plaintiff points out (Doc. 19, pp. 17-18), there are some types of plans, namely, "top hat" ERISA plans, for which payments may be made out of the general corporate assets. A "top hat" plan is defined as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred

23

compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Defendants do not dispute that Plaintiff sufficiently has alleged that the Agreement was intended to provide compensation for a select group of management or highly compensated employees. (*See* Doc. 21, p. 9).[8] Rather, Defendants dispute that Plaintiff has sufficiently alleged that the Agreement was "primarily for the purpose of providing deferred compensation." (Doc. 21, p. 9).

In disputing that requirement, Defendants argue simply that the Agreement does not "'defer' any of Plaintiff's salary for later, more favorable tax treatment." (Doc. 21, p. 9) (citing Doc. 1-1, *passim*). Although Defendants point to no specific provision in the Agreement upon which they rely for that statement, Section 7 states that the Agreement does "not involve a reduction in salary or foregoing of an increase in future salary by the Employee" nor "does the Agreement in any way affect or reduce the existing and future compensation and other benefits of the Employee." (Doc. 1-1, § 7). Based on that language, the Court agrees that the Agreement does not defer any of Plaintiff's salary or reduce any other benefits he currently receives.

Nevertheless, Defendants do not demonstrates that "deferred compensation" is limited to deferred salary or benefits ordinarily received as a part of employment. Under the Agreement, these independent and additional retirement benefits are not payable to Plaintiff until a future date in or after the year 2016 (Doc. 1-1, §§ 1-2), which plausibly suggests that the benefits are deferred. The Agreement also provides that the federal and state income taxes will be withheld from the payments as required by the law in

---

[8] The Agreement provides that "Employee is considered a highly compensated employee or member of a select management group of the Corporation . . . ." (Doc. 1-1, p. 1).

effect at the time those benefits are paid. (Doc. 1-1, § 7). Receiving compensation that is taxable at the time of retirement when the employee may be in a lower tax bracket provides the employee with favorable tax benefits. For these reasons, the Court finds that Plaintiff has alleged facts sufficient to plausibly demonstrate that the benefits payable to him constitute deferred compensation.

Defendants' argument that the "primary purpose" of the Agreement was to "gain Plaintiff's employment loyalty" rather than to provide deferred compensation also is not well-taken at this stage of the litigation.

> The fact that a plan is "established as a means to retain valuable employees" does not disqualify it from top hat status it otherwise deserves. . . . This is equally true if a plan providing unfunded, deferred compensation also aids recruitment of desirable employees. . . .
>
> A desire to recruit and retain excellent employees would be a common, rather than unusual, motive for establishing a top hat plan. . . . The fact that the creation of a plan was motivated by a desire to recruit and retain excellent employees does not disqualify it from receiving the top hat status it otherwise merits.
>
> Alternatively, § 1051(2) expressly requires only that a top hat plan be maintained 'primarily' to provide deferred compensation. The term "primarily" makes it clear that "top hat" plans can have multiple broad purposes.

*Alexander v. Brigham & Women's Physicians Org., Inc.*, 467 F. Supp. 2d 136, 142-43 (D. Mass. 2006) (internal citations omitted). Construing the facts in favor of Plaintiff, the Court finds that Plaintiff has alleged sufficient facts from which it plausibly can be inferred that providing deferred compensation was the primary purpose of the Agreement. Accordingly, Plaintiff has satisfied his burden on the third *Dillingham* factor at this stage of the litigation.

### 4. Procedures for receiving benefits

To satisfy its burden as to the fourth factor of the *Dillingham* test, Plaintiff must allege facts sufficient to make it plausible that a reasonable person could ascertain the procedures for receiving benefits. *Thompson*, 95 F.3d at 434-35. Section 3 of the Agreement is entitled "Named Fiduciary and Claims Procedure." (Doc. 1-1, § 3). That section sets forth various requirements for making a claim under the Agreement, including an appeals process if the claim is denied. (Doc. 1-1, § 3). Specifically, it requires that Plaintiff or the designated recipient make a written request to the named fiduciary. (Doc. 1, p. 28; Doc. 1-1, § 3(b)). If the claim is denied, as it was in this case, then Plaintiff or the designated recipient must be notified in writing of the denial within ninety days. (Doc. 1-1, §§ 3(c), (d)). Plaintiff or his designated recipient may appeal the denial in writing to the named fiduciary within sixty days after receipt of the denial. (Doc. 1-1, § 3(e)). The named fiduciary must exercise his discretion as to whether to hold a hearing on the appeal. (Doc. 1-1, § 3(g)). He then must "promptly" render a decision on the appeal. (Doc. 1-1 § 3(d)-(h)). Defendants do not dispute that the claims procedure is fully outlined in the Agreement. Accordingly, the Court finds that Plaintiff has alleged facts that make it plausible a reasonable person could ascertain the procedures for receiving benefits. Having found that Plaintiff satisfies this fourth factor of the *Dillingham* test, the Court also implicitly has found that Plaintiff satisfies *Fort Halifax's* "ongoing administrative scheme" requirement. *See Hughes*, 298 Fed. App'x at 414 (recognizing that "the ongoing scheme requirement is a lesser hurdle than the reasonably ascertainable claims procedure requirement. . . . The claims procedure, a

requirement for all ERISA benefits, in itself constitutes an ongoing administrative scheme").

Defendants' arguments specific to the two factors required to satisfy the *Fort Halifax* "ongoing administrative scheme" requirement do not change the Court's conclusion. (Doc. 19, pp. 8-11; Doc. 21, pp. 6-7). As to the first factor, Defendants argue that they lacked discretion over the distribution of benefits because the payment requires only a "simple, one-time arithmetical calculation" since the Agreement sets forth the exact amount that Plaintiff would receive each month. (Doc. 16, pp. 10-11). Defendants specifically rely upon the following quote from *Fort Halifax*: "To do little more than write a check hardly constitutes the operation of a benefit plan." *Fort Halifax*, 482 U.S. at 12. Defendants also rely on two additional cases: *Guccione v. Bell*, No. 06cv492, 2006 U.S. Dist. LEXIS 49526, at *8-9 (S.D.N.Y. July 20, 2006) and *Cassidy*, 308 F.3d at 616-17. (Doc. 16, p. 10). Those cases do not mandate dismissal of Plaintiff's ERISA claims.

In *Guccione*, the court recognized that a "one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation and is not a 'plan' under ERISA." *Guccione*, 2006 U.S. Dist. LEXIS 49526, at *8 (quoting *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 736-37 (2d Cir. 2001)). It went on to state that for ERISA to apply, administering the severance plan typically must require "managerial discretion." *Id.* The court found that the plaintiff had not satisfied the "ongoing administrative scheme" requirement because there was absolutely no discretion required, as there was no claims procedure involved under

which the employer had to undertake any type of analysis to process claims or disburse benefits. *Id.*

In contrast, in *Cassidy*, the Sixth Circuit held that a severance plan fell within the scope of ERISA where, among other factors, the payment of benefits required a degree of employer discretion. *Cassidy*, 308 F.3d at 616-17. Although the Sixth Circuit recognized that the benefits in that case were generally formulaic and that "plans in which benefits are predetermined or which involve 'simple or mechanical determinations' have been found not to be ERISA plans[,]" it nevertheless held that there was sufficient employer discretion because "the company president had discretion to approve a larger amount in some cases," and the "employee had to submit a written application in order to receive this retirement benefit, although it is not clear whether [the employer] had discretion to deny any application." *Id.* at 616.

Here, even if it is unnecessary for Defendants to make complex mathematical calculations every month in order to distribute the benefits, other facts are alleged by Plaintiff that plausibly demonstrate that Defendants must determine eligibility for benefits and analyze Plaintiff's particular circumstances in light of the appropriate criteria, although the extent to which the individual circumstances are analyzed is not clear at this stage. *Rodgers v. Q3 Stamped Metal, Inc.*, 499 F. Supp. 2d 984, 990 (S.D. Ohio 2007) ("[A]n employer's need to create an administrative system may arise where the employer, to determine the employee's eligibility for and level of benefits must analyze each employee's particular circumstances in light of the appropriate criteria."). As explained above, there are detailed procedures for submitting claims for benefits under the Agreement, and the named fiduciary is to make specific determinations in

deciding whether Plaintiff qualified for benefits under the Agreement.  (Doc. 1-1, § 3(c), (d)-(h)).  Indeed, the named fiduciary denied Plaintiff's claim for benefits in this case at each level of the claims procedure.  (Doc. 1, ¶ 28; Doc. 1-1, § 3(c), (d)-(h)).  Moreover, Citrosuco retained discretion over whether to pay the benefits in lump sum or in fixed installments.  (Doc. 1-1, § 8).  As such, Plaintiff has met his burden on the issue of employer discretion.

As to the second factor, Defendants argue that the option to make a one-time lump-sum payment of benefits to Plaintiff in and of itself removes the Agreement from the scope of ERISA.  (Doc. 16, pp. 10-11; Doc. 21, pp. 6-7).  More specifically, Defendants argue that the one-time lump-sum payment option conclusively demonstrates that there are no ongoing demands on the corporate assets.  (Doc. 16, pp. 10-11; Doc. 21, pp. 6-8).  The Court disagrees.

To satisfy the second factor, Plaintiff must allege facts that plausibly could show that Citrosuco assumed "'responsibility to pay benefits on a regular basis, and thus faces . . . periodic demands on its assets that create a need for financial coordination and control.'"  *Cassidy*, 308 F.3d at 616 (quoting *Fort Halifax*, 482 U.S. at 12).  Here, the Agreement states that Citrosuco will make yearly payments of $57,059 to Plaintiff for a period of ten years.  (Doc. 1-1, Schedule B).  Although Citrosuco has the right to accelerate the payments, the Agreement does not require Citrosuco to exercise that discretion and it provides no timeframe within which that discretion must be exercised.  (Doc. 1-1, § 8).  Citrosuco therefore may never exercise that discretion or could exercise that discretion during the ninth year in which payments are required.  (Doc. 1-1, § 8).  The fact that Citrosuco agreed to pay a large sum of money to Plaintiff amount

over a ten-year period plausibly suggests that Defendants had the responsibility to pay benefits on a regular basis and faced periodic demands on its assets that created the need for financial coordination and control. *Hughes*, 298 Fed. App'x at 414 ("Thus, a benefits arrangement that provides for a lump-sum payment to an employee may qualify as an ERISA benefits plan if the employer is *potentially* required to pay out benefits on a regular basis.") (emphasis added). Moreover, Plaintiff has alleged that four other employees had such an agreement with Citrosuco thereby making it plausible that Citrosuco would have to make payments to multiple employees at different times, depending on the particular dates on which those employees retired. (Doc. 1, ¶ 10). *See also Fort Halifax*, 482 U.S. at 15 n.9 (recognizing that an ERISA plan may exist when it is predictable that the employees will receive payments at different times in the future regardless of whether the employees received the payments in lump sum or on a periodic basis). Even if Citrosuco accelerated the benefit for one employee, it does not necessarily mean it would have accelerated the benefit for the other employees. As such, the demands on its assets plausibly could be ongoing.

These facts alleged by Plaintiff suggest more of a need for financial control and coordination than the facts in the cases relied upon by Defendants. *See Rodgers*, 499 F. Supp. 2d at 990 (severance benefits and six months of continued medical benefits agreed to in an employment letter may not put an ongoing demand on the employer's assets); *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530, 1540 (3rd Cir. 1992) (one-time payment upon termination and continuation of benefits under a separate benefits plan was insufficient to constitute an ERISA plan); *Fludgate v. Management Technologies*, 885 F. Supp. 645, 648 (S.D.N.Y. 1995) (employment agreement that provided for the

possibility of payment of severance benefits over a two-year period to a single employee was insufficient to constitute an ERISA plan)*, Rosario v. Syntex (F.P.), Inc.*, 842 F. Supp. 2d 441, 447 (D.P.R. 2012) (agreement to provide severance benefits to employees at the closing of a plant in the form of either a lump-sum payment or installment payments for a one-year period did not constitute an ERISA plan). Indeed, the facts in this case are more akin to those in *Cassidy*, 308 F.3d at 616-17. In *Cassidy*, a severance policy provided for a lump-sum payment to employees, but some employees were permitted to choose between a lump sum payment and a two-year salary continuation period. *Id.* at 616-17. Released employees also were permitted to extend some other benefits such as medical, dental and life insurance. *Id.* at 617. Under those circumstances, the Sixth Circuit found that the plaintiff had demonstrated a periodic demand on the employer's assets. *Id.* at 616-17. Although the Court recognizes that Plaintiff has not alleged any promise of continued medical, dental or life insurance benefits, it does not find that issue to be dispositive given that the issue of ongoing demands on an employer's assets is a question of fact to be answered in light of the surrounding circumstances. *Thompson*, 95 F.3d at 434. Construing the facts in the light most favorable to Plaintiff, the Court finds that he has alleged facts that plausibly could demonstrate ongoing demands on Defendants' assets and that he has satisfied the fourth *Dillingham* factor at this stage of the litigation.

For each of the foregoing reasons, Defendants' Motion is denied as to Counts Four and Five of the Complaint.

### D.   Promissory Estoppel

Plaintiff's claim for promissory estoppel (Count Six) is based on alleged oral

promises made by Citrosuco that "if he worked for Defendant until age 65, he would receive a salary continuation for 10 years, would receive the benefits of two insurance policies, and would not be terminated except for Cause." (Doc. 1, ¶ 82). The promises allegedly were made by the corporate president at the time the Agreement was signed, were confirmed by Citrosuco's Secretary/Treasurer, and are "at least in part" set forth in the Agreement. (Doc. 1, ¶ 83). Defendants move for dismissal on the promissory estoppel claim on the grounds that under Ohio law (1) the legal relationship between the parties is governed by a valid and enforceable contract that precludes a promissory estoppel claim, and (2) the oral promises are unenforceable under the Statute of Frauds, Ohio Rev. Code § 1335.05. (Doc. 16, pp. 13-14). Plaintiff counters that (1) federal law is applicable to the extent the Agreement is found to be a "top hat" ERISA plan because it is not inconsistent to bring a claim for promissory estoppel together with a "top hat" ERISA claim, and (2) even if the Agreement is not an ERISA plan, Plaintiff has stated a claim for relief under Ohio law on the promise of continued employment to the extent it is found to be outside the scope of the Agreement. (Doc. 19, pp. 22-23). Defendants respond that the Agreement permits modifications only in writing and that his allegations as to an oral promise of continued employment are insufficient to state a claim. (Doc. 21, p. 11).

Addressing first Plaintiff's assertion of a claim for promissory estoppel in connection with a "top hat" ERISA plan, the Sixth Circuit has recognized that a plaintiff may bring a promissory estoppel claim against an ERISA welfare benefit plan, but has not expressly recognized such a claim in the context of pension or other retirement plans. *Sprague v. GMC*, 133 F.3d 388, 403 (6th Cir. 1998). *Accord*: *Soper v. Infusion*

*Partners, Inc.*, No. 1:07-cv-645, 2008 U.S. Dist. LEXIS 113043, at *12-13 (S.D. Ohio Nov. 26, 2008) (noting that the Sixth Circuit had not expressly applied promissory estoppel to a pension plan, and declining to do so there because the plan was a pension plan where actuarial concerns were at issue). One district court in the Sixth Circuit has acknowledged that the doctrine of estoppel may be applicable in the context of a top hat plan where the plan can be written or oral, in whole or in part. *Straney v. GMC*, No. 06-CV-12152, 2008 U.S. Dist. LEXIS 3212, at *6-7 (E.D. Mich. Jan. 16, 2008). Other courts outside the Sixth Circuit also have found the doctrine of estoppel applicable in the context of a top hat plan. *See, e.g.*, *Senior Exec. Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.)*, 89 F.3d 143, 152 (3d Cir. 1996) (recognizing the viability of estoppel claims against top-hat plans) (citing *Callahan v. Unisource Worldwide, Inc.*, 451 F. Supp. 2d 428, 437 (D. Conn. 2006) (same); *Koenig v. Waste Mgmt., Inc.*, 76 F. Supp. 2d 908, 915-916 (N.D. Ill. 1999) (same); *see also* John F. Buckley IV, *ERISA Law Answer Book* 18:23 (6th ed. 2008) ("[e]stoppel claims are appropriate in cases involving top-hat plans . . .")). To establish a claim for promissory estoppel under ERISA, a plaintiff must show: (1) conduct or language amounting to a representation of material fact; (2) the party to be estopped is aware of the true facts; (3) the party to be estopped intended that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel is unaware of the true facts; and (5) the party asserting the estoppel reasonably or justifiably relied on the representation to his detriment. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428-29 (6th Cir. 2006) (citing *Sprague*, 133 F.3d at 403). "Principles of estoppel,

however, cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague*, 133 F.3d at 404 (citing *Fink v. Union Central Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996); *Hudson v. Delta Air Lines*, 90 F.3d 451, 458 n.12 (11th Cir. 1996), *cert. denied*, 519 U.S. 1149, 137 L. Ed. 2d 217, 117 S. Ct. 1082 (1997)).

Defendants do not expressly dispute Plaintiff's argument that federal law is applicable if the Agreement is found to be governed by ERISA. Nor do they specifically argue that Plaintiff has failed to satisfy the required elements. The Court therefore does not engage in that analysis here. Defendants instead focus on the argument that no such claim can exist where the Agreement provides for no modifications except by writing. (Doc. 21, p. 11). Although the language of the Agreement does prevent subsequent oral modifications of the Agreement (Doc. 1-1, § 11), Defendants have not demonstrated conclusively that it prevents promises that were made to Plaintiff either orally or in writing prior to or at the time of the Agreement from being enforceable where, as here, there are two reasonable interpretations of that Agreement set forth by the parties. As such, the Court finds Plaintiff's promissory estoppel claim is not barred under federal law at this stage of the litigation.

Under Ohio law, the elements necessary to prove a claim for promissory estoppel are: (1) a clear, unambiguous promise, (2) the person to whom the promise is made relies on the promise, (3) reliance on the promise is reasonable and foreseeable, and (4) the person claiming reliance is injured as a result of reliance on the promise."

*Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio App. 2008).[9]  Promissory estoppel "is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract."  *Thomas & Marker Constr., Co. v. Wal-Mart Stores, Inc.*, No. 3:06-cv-406, 2008 U.S. Dist. LEXIS 79072, at *62 (S.D. Ohio Sept. 15, 2008) (applying Ohio law).  Indeed, "there can not be an express agreement and an implied contract for the same thing existing at the same time."  *Harwood v. Avaya Corp.*, No. C2-05-828, 2007 U.S. Dist. LEXIS 38722, at *32-33 (S.D. Ohio May 25, 2007) (citing *Hughes v. Oberholtzer*, 123 N.E.2d 393 (Ohio 1954)); *see also Warren v. Trotwood-Madison City Sch. Dist. Bd. of Educ.*, No. 17457, 1999 Ohio App. LEXIS 1035, at *19 (Ohio App. Mar. 19, 1999).

A party also may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds.  *Olympic Holding Co., LLC v. ACE Ltd.*, 909 N.E.2d 93, 100-01 (Ohio 2009); *Heinz & Assocs. v. Diamond Cellar Holdings LLC*, No. 10CVH-04-6672, 2011 Ohio Misc. LEXIS 235, at *12 (Ohio C.P. June 20, 2011).  A party, however, may pursue an action for reliance damages under a promissory estoppel theory, even though the statute of frauds bars their breach of contract claim.  *Olympic Holding Co., LLC*, 909 N.E.2d at 100-01 ("The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice. . . .  [P]romissory estoppel is an adequate remedy for a fraudulent oral promise or breach of an oral promise, absent a signed agreement.") (internal citations omitted).

---

[9]The parties both argue the state common law claim of promissory estoppel under Ohio law.  (Doc. 16, pp. 13-14; Doc. 19, pp. 22-23).

Although the parties have entered into the Agreement, the Agreement must be valid and enforceable to bar Plaintiff's claim for promissory estoppel. *See Thomas & Marker Constr., Co.*, 2008 U.S. Dist. LEXIS 79072, at *62. The Court finds that it is premature at this stage of the litigation to make a determination as to the validity and enforceability of the Agreement. As such, the oral promises allegedly made to Plaintiff plausibly may form the basis of a promissory estoppel claim for reliance damages under Ohio law. If the Agreement, however, is ultimately found to be valid and enforceable, then Plaintiff may be barred from asserting a promissory estoppel claim for reliance damages under Ohio law based on those oral promises covered by the Agreement but will not be barred from asserting a promissory estoppel claim for reliance damages based on oral promises not covered by the Agreement. In other words, if Plaintiff can demonstrate each of the elements of the promissory estoppel claim as to any oral promises not covered by the Agreement, then he may be able to recover reliance damages. As Defendants do not otherwise challenge Plaintiff's satisfaction of the elements of his promissory estoppel claim at this stage of the litigation, the Court finds that Plaintiff has alleged facts that could plausibly state a claim for relief and may pursue reliance damages under a promissory estoppel theory for the alleged promises set forth in Count Six.

Moreover, Defendants' argument that the oral praise and accolades alleged by Plaintiff are insufficient to alter a presumption of at-will employment absent assurances of continued employment for a definite period of time (Doc. 21, p. 15) does not change the Court's conclusion. In reviewing Plaintiff's allegations, the Court finds that Plaintiff has set forth more than allegations of accolades or praise to support a determination of

continued employment; indeed, he alleges facts as to a specific promise of continued employment until the age of 65, as to when the promises were made and by whom, and as to his reliance on the promise. (Doc. 1, ¶¶ 82-86). The Court finds those allegations are sufficient at this stage of the litigation to state a plausible claim for relief.

For the foregoing reasons, Defendants' Motion is denied with respect to Count Six.[10]

### E.    Unjust Enrichment

Unjust enrichment occurs under Ohio law "when a party retains money or benefits which in justice and equity belong to another." *Liberty Mut. Ins. Co. v. Indus. Comm'n. of Ohio*, 532 N.E.2d 124, 125 (Ohio 1988).[11]  To prevail on a claim of unjust enrichment, a plaintiff must show "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).  When discussing the "benefit" element, Ohio courts "focus on the value of what was provided to the defendant, as opposed to [focusing] on the damages incurred by the plaintiff...." *Wilkin v. Fyffe*, No. 96-CA-03, 1996 Ohio App. LEXIS 3905, at *13 (Ohio App. Sept. 13, 1996); *Hughes v. Oberholtzer*, 123 N.E.2d 393 (Ohio 1954).  "Stated another way courts look to see whether the complaint alleges more than that a benefit was conferred." *Jan*

---

[10]Although Defendants did not specifically raise the issue of preemption at the motion to dismiss stage, all or part of Plaintiff's state law claim may be preempted if it is determined that the Agreement is governed by ERISA.  29 U.S.C. § 1144(a).

[11]The parties both argue the state common law claim of unjust enrichment under Ohio law.  (Doc. 16, p. 14; Doc. 19, p. 24).

*Bliwas, Inc. v. Cent. States,* Nos. 2:96-cv-132, 2:96-cv-948-981, 2:96-cv-1068, 2:97-cv-471, 1998 U.S. Dist. LEXIS 23316, at *13 (S.D. Ohio Feb. 13, 1998).  Instead, it must allege unjust enrichment by seeking to recover the value of something furnished to the defendant, rather than relying on express promises.  *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1016 (Ohio App. 2003).  Absent fraud, bad faith, or illegality, unjust enrichment is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract.  *Harwood v. Avaya Corp.*, 2007 U.S. Dist. LEXIS 38722 at *33; *Thomas & Markers Constr., Co.*, 2008 U.S. Dist. LEXIS 79072, at *58; *Turturice v. AEP Energy Servs.*, No. 06AP-1214, 2008 Ohio App. LEXIS 1571, at *15 (Ohio App. Apr. 17, 2008).

Defendants contend that Plaintiff has failed to state a plausible claim for relief for unjust enrichment (Count Seven) because the relationship is governed by a written contract.  (Doc. 14).  Plaintiff counters that he is permitted to plead in the alternative, that a valuable benefit was conferred on Citrosuco by Plaintiff for which he was not compensated, and that Plaintiff has alleged illegality or bad faith sufficient to preclude dismissal.  (Doc. 19, p. 23).

The Court holds that Plaintiff has stated a plausible claim for unjust enrichment at this stage of the litigation.  Plaintiff has alleged that his continued employment with Citrosuco conferred upon Citrosuco the value of continued success that it would not have received but for that loyalty and dedication of Plaintiff.  (Doc. 1, ¶¶ 26, 88-92; *see also* Doc. 19, p. 24).  If Plaintiff remains uncompensated for any alleged value he brought to Citrosuco relating to its continued success, then Citrosuco may have obtained a benefit the value of which Plaintiff may be entitled to recover.  Although the

38

Agreement appears to speak to that alleged value and the benefits to be conferred, the Court finds, as it did above, that it is premature at this stage of the litigation to decide that the Agreement is valid and enforceable so as to bar the unjust enrichment claim. Moreover, Plaintiff has alleged facts that plausibly demonstrate bad faith. (*See* Doc. 1, ¶¶ 20-28).[12] Therefore, Plaintiff has satisfied his burden at this stage of the litigation, and Defendant's Motion is denied with respect to Count Seven.[13]

### F.    Declaratory Judgment

Defendants seek dismissal of Plaintiff's claim for a declaratory judgment (Count One) on the grounds that it is not ripe within Article III of the Constitution because Plaintiff has not yet satisfied the pre-conditions for receiving benefits under the Agreement that he continue to be employed by Citrosuco until March 19, 2016 and that he retire. (Doc. 16, pp. 17-18; Doc. 21, p. 16). Plaintiff counters that his claim is ripe for consideration because Citrosuco has breached the Agreement by terminating him without cause and not agreeing to pay him the appropriate benefits. (Doc. 19, pp. 28-29).

A claim is "ripe" within the meaning of Article III where there exists a "case or controversy." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-40 (1937). A controversy exists when it is "definite and concrete, touching the legal relations of the parties having adverse legal interests." *Id.* at 240-41. Disputes involving "contingent

---

[12] Although Plaintiff also argues illegality, he does so on the basis of allegations that are not contained in the Complaint. (*Compare* Doc. 1-1 *with* Doc. 19, p. 24). As those allegations are not in the Complaint, the Court will not consider them here.

[13] As with Plaintiff's other state law claims, his unjust enrichment claim may be preempted if it is determined that the Agreement is governed by ERISA. 29 U.S.C. § 1144(a). Defendants, however, did not raise that issue in their Motion.

future events that may not occur as anticipated, or indeed may not occur at all" are not prone to declaratory relief. *United Steelworkers v. Cyclops Corp.*, 860 F. 3d 189, 194 (6th Cir. 1998). In other words, the dispute must be "concrete and particularized" and "actual and imminent." *Sherwin-Williams v. City of Columbus*, No. 2:06-cv-829, 2008 U.S. Dist. LEXIS 25084, at *15 (S.D. Ohio 2008). To determine whether a claim is ripe, the Sixth Circuit weighs three factors: (1) "the likelihood that the harm alleged will ever come to pass"; (2) "the sufficiency of the factual record"; and (3) "the hardship that refusing to entertain the plaintiff's claims would create for the parties." *Moon v. Hyosung (Am.)*, No. 92-2064, 1994 U.S. App. LEXIS 27556, at *14-15 (6th Cir. Sept. 28, 1994) (citing *United Steelworkers of America, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194-95 (6th Cir. 1988)).

The Court focuses on the first factor of whether the harm alleged will ever come to pass, as it is the factor upon which Defendants' entire argument rests. Under the first factor, Plaintiff "must demonstrate a realistic danger of sustaining a direct injury" in order for his claim to be ripe. *Moon*, 1994 U.S. App. LEXIS 27556, at *15 (citing *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979)). Plaintiff has made such a demonstration. Based on the Court's analysis with respect to Plaintiff's other claims, it is plausible that Plaintiff is entitled to one or more types of benefits from Citrosuco. Although it is not certain as to when those benefits are payable to Plaintiff, it is not out of the question based on the alleged facts that one or more of those benefits is presently due to him. If that is the case, then a harm already may have come to pass and may be continuing. As such, the first factor weighs in favor of finding the claims ripe for review.

Although Defendants do not address the second and third factor, the Court will briefly consider them. The second factor is less clear, but still weighs in favor of Plaintiff. Under the second factor, the Court must consider "whether the factual record of this case is sufficiently developed to produce a fair and complete hearing as to the prospective claims." *United Steelworkers of America, Local 2116*, 860 F.2d at 195. Here, the facts alleged by Plaintiff suggest that the facts of the case are sufficiently developed. An Agreement and a subsequent modification have been entered into, and Plaintiff has been terminated without cause. Citrosuco has agreed to pay Plaintiff some benefits under certain terms that Plaintiff does not believe satisfy its obligations. Plaintiff now is unclear as to what his rights to benefits are under the Agreement and the subsequent modification thereof. While there is a potential that future events could alter how much or to what extent Plaintiff will receive any benefits (i.e., bankruptcy), no party has expressed any concern in that regard. In any event, the ripeness doctrine is concerned primarily with the justiciability of claims, not with certainty as to the quantum of damages, and the second factor is frequently viewed, rightly or wrongly, as being of prudential rather than constitutional origin. *See Moon*, 1994 U.S. App. LEXIS 27556, at *16-17 (citing E. Chemerinsky, Federal Jurisdiction, § 2.4.1, at 101 (1989); *Koehring Co. v. Adams*, 605 F.2d 280, 282 (7th Cir. 1979) (suggesting that prudential ripeness concerns may be waived by failure to raise them in the district court)).

As to the third factor, there are at least two obvious harms that would flow from a decision against Plaintiff on the ripeness issue. He would have to wait several years to determine what his rights to the benefits are from Citrosuco, and he would possibly not get paid as soon as he ought to by Citrosuco. Defendants do not suggest that they

41

would suffer harm if the Court determines that the case is not ripe.

Weighing those three factors, the Court is persuaded that the instant dispute is ripe for adjudication. Accordingly, Defendants' Motion is denied as to Count One.

###    G.    Secretary/Treasurer of Citrosuco as a Defendant

Defendants argue that the Secretary/Treasurer of the Corporation, who is identified in the Agreement as the Named Fiduciary, should be dismissed as a defendant because the Agreement provides for the pursuit of benefits under the Agreement from only the "Corporation" (*i.e.*, Citrosuco). Specifically, Section 6 of the Agreement provides: "The Employee, the designated recipient of the Employee, or any other person claiming through the Employee, shall have the right to receive those payments specified under the Agreement only from the *Corporation*." (Doc. 1-1, § 6). Section 12 of the Agreement further provides that Plaintiff "shall only have recourse against the *Corporation* for enforcement of the Agreement." (Doc. 1-1, § 12). In response, Plaintiff argues that plaintiffs frequently sue both an employer and a plan administrator such that the language of the Agreement does not preclude Plaintiff from suing the Secretary/Treasurer. (Doc. 19, p. 21). Plaintiff further notes that the Secretary/Treasurer is an employee of the Corporation. (Doc. 19, p. 21).

The Court concludes that the Secretary/Treasurer should not be dismissed as a defendant in this lawsuit at this stage of the litigation. The Secretary/Treasurer is an employee of Citrosuco. (Doc. 1-1, ¶ 3(a)) ("The Named Fiduciary of the plan for purposes of the claims procedure under this Agreement is the Secretary/Treasurer of the Corporation."); *see also* (Doc. 19, p. 21). Citrosuco therefore may be responsible for the actions of the Secretary/Treasurer that were within the scope of his employment.

As such, the inclusion of the Secretary/Treasurer as a defendant in the litigation would not be inconsistent with the terms of the Agreement that provide for recovery only from Citrosuco for the benefits provided for in the Agreement. Moreover, Plaintiff has alleged facts as to the involvement of the Secretary/Treasurer in making specific decisions as to Plaintiff's rights to benefits and making oral promises to Plaintiff that plausibly are not covered by the Agreement, which may implicate the actions of the Secretary/Treasurer as an employee of Citrosuco. (Doc. 1, ¶ 83). For these reasons, the Court is not persuaded that it is necessary to dismiss the Secretary/Treasurer as a defendant at this stage. Nor is the Court persuaded that it would be inconsistent with the Agreement to decline to dismiss the Secretary/Treasurer as a defendant. Accordingly, Defendants' Motion is denied as to this issue.

III.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion (Doc. 16) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court

43